UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GALE ANDERSON, et al.,               )
                                     )
              Plaintiff,             )
                                     )
      v.                             )        1:17-cv-00346-JAW
                                     )
LIBERTY MUTUAL INSURANCE,            )
                                     )
              Defendant.             )

**ORDER ON MOTION FOR JUDGMENT ON THE RECORD**

A beneficiary of an accidental death and dismemberment insurance policy
challenges the insurer's decision to deny benefits under the policy. Because the
beneficiary's claim is barred for failing to exhaust internal remedies and because the
insurer's denial for failure to provide requested documents was reasonable, the Court
grants judgment in favor of the insurer.

I.    **FACTS AND PROCEDURAL HISTORY**

      A.    **The Parties**

John R. Anderson (Decedent) was an employee of Bangor Publishing Company
or a related entity (BPC) and participated in an employee benefit plan (the Plan).
Administrative Record (AR) 1, 53. John Anderson's mother is Nancy Anderson, and
his father is Gale Anderson. Compl. ¶¶ 1-2 (ECF No. 1); AR 6-7. Gale Anderson is
the sole beneficiary under the Plan. AR 28, 50.

Liberty Life Assurance Company of Boston (Liberty Life, named in the caption
as Liberty Mutual Insurance) issued a group life insurance policy (the Policy) funding

life insurance benefits available through the Plan. AR 54-88. Liberty Life also administers claims for life insurance benefits the Plan makes available. AR 64, 71, 82-85. The Plan provides basic life and accidental death and dismemberment (AD&D) benefits to covered employees of BPC. AR 55-57.

## B. The Plan

Under the Plan, AD&D "benefits are payable when a Covered Employee suffers a loss solely as the result of accidental Injury that occurs while covered." AR 74. However, AD&D benefits are not payable "for any loss that is contributed to or caused by . . . controlled substances . . . that are voluntarily taken, ingested or injected, unless as prescribed or administered by a Physician." AR 79. Benefits are also not payable for any loss caused or contributed by "the presence of alcohol in the Covered Person's blood which raises a presumption that the Covered Person was under the influence of alcohol and contributed to the cause of the accident." *Id.*

Under the "Notice and Proof of Claim" provision of the Plan, "Satisfactory Proof of loss must be given to Liberty Life no later than 30 days after the date of loss." AR 85. "Failure to furnish such proof within [30 days] shall not invalidate or reduce any claim if it was not reasonably possible" to provide proof in that time, but "[s]uch Proof must by furnished as soon as reasonable possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required." *Id.* Liberty Life also "reserves the right to determine if the Covered Person's Proof of loss is satisfactory," *id.*, and possesses "the authority, in its sole discretion, to construe the terms of [the Plan Document] and to determine benefit eligibility." AR 84.

The "Appeal Process" provision of the Plan states:

> Liberty will notify in writing any Covered Person or beneficiary whose claim is denied in whole or part. That written notice will explain the reasons for denial. If the claimant does not agree with the reasons given, he may request an appeal of the claim. To do so, the claimant should write to Liberty within 60 days after the notice of denial was received.

AR 82.

Under the "Legal Proceedings" provision of the Plan, "Legal actions are contingent upon first having followed the Claims and Appeals procedure outlined in this policy." AR 84.

## C.    The Claim

On January 30, 2016, John Anderson died while operating a snowmobile when it collided with a tree. AR 29, 48. At the time of his death, the decedent had $45,000 in basic life coverage and $45,000 in AD&D coverage under the Plan. AR 25, 50. On February 22, 2016, the decedent's employer sent an "employee proof of death" form, a death certificate, and a beneficiary designation form to Liberty Life. AR 49-52.

## D.    The Documents Requests

On February 25, 2016, Liberty Life sent the beneficiary, Gale Anderson, a letter stating that it "will proceed with our review of the [AD&D] claim submitted by [BPC]." AR 42. Liberty Life also requested certain documents from him to complete its investigation, including a police report, witness statements, a toxicology report, an autopsy report, and a signed authorization. *Id.* The letter also recited the Plan's AD&D exclusions. AR 42-43.

On April 1, 2016, Liberty Life sent a second letter requesting the same list of documents set forth in its February 25, 2016 letter. AR 39. On May 4, 2016, Liberty

Life sent a third letter, reducing its document requests to the police report, toxicology report, and a signed authorization from Mr. Anderson in order to complete its "investigation of the AD&D Benefits." AR 36. Liberty Life sent two more letters to Mr. Anderson requesting the same reduced set of documents on June 9, 2016, and July 15, 2016. AR 30, 33.

On July 27, 2016, Liberty Life paid the beneficiary, Mr. Anderson, $45,000 through his attorney for basic life insurance benefits. AR 22, 25. In the letter enclosing the payment for the basic life insurance claim, Liberty Life again requested the expanded list of documents it first requested on February 25, 2016 in order to complete its investigation of the AD&D claim. AR 22.

On August 25, 2016, Liberty Life spoke with the assistant to Mr. Anderson's attorney, who said she saw something come through the other day and that she would send something to Liberty Life. AR 6. On August 29, 2016, Liberty Life left a telephone message with Mr. Anderson's attorney. *Id.* On August 31, 2016, Mr. Anderson's attorney advised Liberty Life that he had additional information that he would send to Liberty Life by the end of the week. AR 5. Mr. Anderson's attorney said that he thought there was going to be a disagreement on the exclusion for intoxication, and he indicated that he did not agree with the manner in which the measurement was taken. AR 5-6.

On September 30, 2016 and October 31, 2016, Liberty Life left further telephone messages for Mr. Anderson's attorney. AR 5. Liberty Life sent another

letter requesting the documents to Mr. Anderson's attorney on November 2, 2016. AR 18.

### E.     The Denial

On December 5, 2016 Liberty Life sent another letter to Mr. Anderson's attorney requesting the documents.  AR 15.  In bold text, Liberty Life advised the attorney:

> **Please note, if these documents have not been received within the next 30 days or by January 05, 2017, the AD&D portion of this claim will be closed due to failure to provide[.]**

AR 15.

On January 11, 2017, Liberty Life sent Mr. Anderson's attorney a letter recounting the series of communications and informing him that no AD&D benefits are payable under the Policy because "the requested documents for the AD&D claim were not provided to Liberty within the Notice and Proof of Loss time frame required under the policy."  AR 10-12.  The denial letter also excerpted the "Notice and Proof of Claim" provision, AR 11, and indicated that he "may request a review of this denial by writing to the Liberty representative signing this letter" and "[i]f Liberty does not receive your written request within 60 days of your receipt of this notice, our claim decision will be final, this file will remain closed, and no further review of this claim will be conducted."  AR 12.

There is no evidence in the record that Mr. Anderson appealed Liberty Life's adverse determination or that Mr. Anderson (or his counsel) ever sent the requested documents to Liberty Life.

## F.    The Lawsuit

On August 14, 2017, the Andersons[1] filed a complaint with the Aroostook County Superior Court alleging breach of contract and seeking declaratory judgment and damages for $50,000 in AD&D coverage.  *Notice of Removal* Attach 1 *Compl.* (ECF No. 1).  On September 5, 2017, Liberty Life removed the case to federal court. *Notice of Removal* (ECF No. 1).  On September 12, 2017, Liberty Life filed its Answer to the Complaint.  *Answer* (ECF No. 4).

On November 27, 2017, Liberty Life filed a motion for judgment on the record. *Def. Liberty Life Assurance Co. of Boston's Mot. for J. on the R. for Judicial Review* (ECF No. 18) (*Def.'s Mot.*).  On December 18, 2017, Mr. Anderson filed his response. *Pls.' Resp. to Def.'s Mot. for J. on the R. for Judicial Review* (ECF No. 19) (*Pl.'s Opp'n*). After receiving permission from the Court, Liberty Life filed a reply on January 31, 2018.  *Def. Liberty Life Assurance Co. of Boston's Reply Mem.* (ECF No. 23) (*Def.'s Reply*).

---

[1]       In a footnote, Liberty Life questions whether Nancy Anderson, as executor of the Decedent's Estate, is a proper plaintiff because she is not a beneficiary of the Plan and because the benefits are a non-probate asset not distributed through the Estate.  *Def.'s Mot.* at 6 n.3.  The Plaintiffs did not respond to that argument.  Normally the Court would not need to address an argument raised in such a manner.  *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 61 n.17 (1st Cir. 1999) ("We have repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived").  But the Court has a duty to assure itself of its jurisdiction, including Article III standing to sue, even when parties have not raised the issue.  *See Pagan v. Calderon*, 448 F.3d 16, 26 (1st Cir. 2006).  For Ms. Anderson to have standing, she must show (1) that she is suffering or is threatened with an injury-in-fact; (2) that there is a causal connection between Liberty Life's action of which she complains and her threatened injury; and (3) that action by the Court favorable to her would likely redress her threatened injury.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992).  Although Ms. Anderson likely has sincere personal concerns about the outcome of the case, she has not demonstrated that she is suffering from or is threatened with an injury-in-fact because she has no legal interest in the funds at stake.  Accordingly, the Court dismisses Nancy Anderson from the case and refers only to Gale Anderson for the remainder of the order.  Even if Ms. Anderson were not dismissed, the Court's decision as to Gale Anderson would apply with equal force to Nancy Anderson and the result would be the same as to her.

## II. THE PARTIES' POSITIONS

### A. Liberty Life's Motion

Liberty Life argues that Mr. Anderson's state law claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (ERISA). *Def.'s Mot.* at 6-10; *Notice of Removal* at 2 (ECF No. 1). Liberty Life contends that Mr. Anderson's claim should be dismissed because he failed to exhaust the Plan's administrative remedies before filing suit. *Id.* 10-12. It claims the dismissal should be with prejudice because Mr. Anderson's time window to pursue an internal appeal has expired. *Id.* at 12-14.

Liberty Life also points out that the Plan unambiguously confers discretionary authority to construe the terms of the Plan and to determine benefits eligibility. *Id.* at 14-15. It asserts that even if Mr. Anderson's claims are not barred for failure to exhaust internal remedies, Liberty Life did not abuse its discretion by denying his claim for failing to provide information reasonably requested. *Id.* at 15-16. Liberty Life maintains that its requests for records were reasonable and appropriate because it made numerous requests over an extended period of time, the records were pertinent to its investigation, and because Mr. Anderson's counsel suggested he had information adverse to Mr. Anderson's claim but failed to produce it. *Id.* at 16-17. Liberty Life submits that "any contrary ruling would send the wrongful message that claimants may withhold any relevant, requested records that they deem adverse to their claims." *Id.* at 17.

### B.    Gale Anderson's Response

Preliminarily, Mr. Anderson concedes that "this matter is subject to complete preemption by ERISA." *Pl.'s Opp'n* at 3-4.  He "respectfully request[s] leave of the Court to amend [his] Complaint pursuant to Federal Rules of Civil Procedure 15(a)(2) to bring this matter in conformity with the pleading requirements of ERISA." *Id.* at 4.

Next, Mr. Anderson asserts that Liberty Life's motion for judgment on the record should be treated as a motion for summary judgment, so "the Court should view the record, and all inferences derived therefrom, in a light most favorable to [him]." *Id.* at 1.  Mr. Anderson claims there was a significant delay in receiving the toxicology report from the Maine Warden's Service, so he did not obtain it before September 16, 2016 but intimates he did eventually send the report to Liberty Life. *Id.* at 3; *Def.'s Mot.* at 16 n.8.  Mr. Anderson does not dispute that ERISA preempts the state law claims, and requests leave to amend his Complaint to bring it into conformity with ERISA pleading requirements.[2]  *Pl.'s Opp'n* at 2.

Mr. Anderson claims that Liberty Life did not properly notify him of its denial of benefits and right to appeal. *Id.* at 4.  "[T]he letter of denial should have been sent, or at the very least copied, to the beneficiary himself in accordance with the provisions of the Plan and not solely to the attorney . . . ." *Id.*  Mr. Anderson contends that Liberty Life should be precluded from asserting failure to exhaust administrative remedies, citing an ERISA regulation that requires, "In no event may such a period

---

[2]     Since the parties agree that ERISA completely preempts the state law claims, the Court construes Mr. Anderson's claims as actions brought to recover benefits under ERISA.

expire less than 60 days *after receipt by the claimant* of written notification of denial of claim." *Id.* at 5 (citing 29 C.F.R. §2560.503-1(g)(3)) (emphasis supplied by Mr. Anderson).

Mr. Anderson also submits that his claim should not be denied because the modern trend is to require that an insurer show it was prejudiced by an insured's delay. *Id.* at 5-6 (citing *Ouellette v. Maine Bonding & Cas. Co.*, 495 A.2d 1232 (Me. 1985)). He claims that Liberty Life has not shown it was prejudiced by the delays. *Id.* at 6.

Mr. Anderson maintains that the language of the Plan, the December 5, 2016 letter, and the January 11, 2017 letters were "misleading in that a person of ordinary intelligence would not conclude that he/she is giving up all rights of judicial review" by declining to file an internal appeal "given the permissive and/or voluntary language of those provisions setting forth a claimant's appeal rights." *Id.* at 6-9. "Absent from the language of the Plan as well as from any correspondence sent by Defendant was a statement or warning to the effect that by not requesting a review, the Plaintiff[ ] w[as] effectively waiving [his] right to sue in federal court." *Id.* at 7. Mr. Anderson argues that the language in the plan that "[l]egal actions are contingent upon first having followed the Claims and Appeals procedure outlined in this policy" is an insufficient warning because, in choosing not pursue a review, a claimant has not failed to comply with all claims and appeals procedures if that review process is permissive or voluntary. *Id.*

Mr. Anderson argues that Liberty Life should be precluded from asserting failure to exhaust administrative remedies because it imposed an arbitrary deadline in closing the claim, quoting language in the plan: "Such Proof must be furnished as soon as reasonably possible, *and in no event*, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required." *Id.* (quoting AR 85, emphasis supplied by Mr. Anderson). Mr. Anderson maintains that "[s]ince February 25, 2016 was the first time in which 'proof was otherwise required,' the deadline to provide such proof was February 25, 2017." *Id.*

Finally, Mr. Anderson maintains that even if his claim is to be dismissed for failure to exhaust administrative remedies, it should be dismissed without prejudice. *Id.* at 9 (citing *Rivera-Diaz v. Am. Airlines, Inc.*, 229 F.3d 1133, 2000 WL 1022888, 2000 U.S. App. LEXIS 18008 (1st Cir. 2000)).

### C. Liberty Life's Reply

Liberty Life replies to Mr. Anderson's request that his Complaint be amended. *Def.'s Reply* at 1. It states that it has no objection to the Court's granting leave to amend the Complaint to treat Mr. Anderson's claim as arising out of § 502(a)(1)(B) of ERISA. *Id.*

Liberty Life dismisses as baseless Mr. Anderson's argument that notice of the claim denial was ineffective because it sent the letter to Mr. Anderson's attorney, rather than to him directly, arguing that delivery to a plaintiff's attorney is sufficient notice to a plaintiff. *Id.* at 2-3. Likewise, Liberty Life denies that permissive language avoids the exhaustion requirement in any case, but also Liberty Life doubts whether Mr. Anderson was misled, emphasizing that Mr. Anderson was represented

by counsel. *Id.* at 3-4. Liberty Life points out that Mr. Anderson's claims about when he received and sent the toxicology report are not part of the record, are made without affidavit, and when Liberty Life left further messages and sent letters between September 20, 2016 and January 2017, Mr. Anderson never indicated that he had already sent the toxicology report. *Id.* at 5.

Liberty Life insists that its decision to close Mr. Anderson's claim was not arbitrary because "the only reasonable interpretation" of the proof of loss provision "is that is that a claimant may be excused from providing proof of loss within 30 days of the loss if it was not reasonably possible to do so, provided that proof of loss is submitted as soon as reasonably possible within a 395-day window (one year plus 30 days)." *Id.* at 6. Liberty Life rejects Mr. Anderson's interpretation that "if it was reasonably possible to submit proof of loss within say 95 days of the loss, a claimant nonetheless may wait 300 more days to do so without any recourse." *Id.* Liberty Life also argues that Mr. Anderson's citation to notice-prejudice requirements imposed on liability insurers by some state courts do not apply to ERISA plans. *Id.* at 7-8.

Finally, Liberty Life argues that even if the toxicology report were part of the record, the toxicology report confirms that the Decedent had a blood alcohol concentration of .395, several times the amount that causes substantial impairment in vehicle control, so its decision to deny the claim would not be arbitrary and capricious even if Mr. Anderson's lawsuit were not otherwise barred. *Id.* at 7.

## III. LEGAL STANDARD

"The decision to which judicial review is addressed is the final ERISA administrative decision," so parties ordinarily cannot admit "extra-administrative

record evidence . . . ." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519 (1st Cir. 2005). Courts review benefits decisions by plan administrators de novo, unless the benefits plan grants the administrator discretion to make benefits decisions. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Terry v. Bayer Corp.*, 145 F.3d 28, 37 (1st Cir. 1998). "[D]e novo review generally consists of the court's independent weighing of the facts and opinions" and "grants no deference to administrators' opinions or conclusions based on these facts." *Orndorf*, 404 F.3d at 518; *see also Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010). Where, as here, a plan fiduciary has the discretion to determine eligibility for and entitlement to benefits, the district court must uphold the fiduciary's decision unless it is "arbitrary, capricious, or an abuse of discretion." *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 28 (1st Cir. 2005); *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 125 (1st Cir. 2004) (quoting *Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 212-13 (1st Cir. 2004)).

Under this standard, the plan administrator's decision will be upheld so long as the termination is both reasonable and supported by substantial evidence. *Id.* at 126; *see also Leahy v. Raytheon Co.*, 315 F.3d 11, 17 (1st Cir. 2002) ("The arbitrary and capricious standard asks only whether a factfinder's decision is plausible in light of the record as a whole . . ."). "Substantial evidence" means evidence reasonably sufficient to support a conclusion. *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998). Sufficient evidence is not nullified by the mere existence of

contradictory evidence. *Id.*; *see also Gannon*, 360 F.3d at 213 ("[T]he existence of contrary evidence does not, in itself, make the administrator's decision arbitrary").

There is tension between the arbitrary and capricious standard and the usual inferences at summary judgment:

> The arbitrary and capricious standard asks only whether a factfinder's decision is plausible in light of the record as a whole, or, put another way, whether the decision is supported by substantial evidence in the record. The summary judgment standard, however, asks whether the factfinder's decision is inevitable even when all the evidence is marshaled in the objecting party's favor and all reasonable inferences therefrom are shaped to fit that party's theory of the case.

*Leahy*, 315 F.3d at 17 (internal citations omitted). The First Circuit acknowledges that this dichotomy can be "baffling" but has concluded that it would "distort[ ] the law" "to treat the summary judgment standard as if it permitted [courts] to review the ingredients of the administrative record de novo, without deference to the plan administrator's findings . . . ." *Id.* at 17-18. Instead, "in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Id.*

The First Circuit resolves this tension by adapting the "procedural device" of summary judgment to the ERISA context. "In such cases, 'summary judgment is simply a vehicle for deciding the issue,' and, consequently, 'the non-moving party is not entitled to the usual inferences in its favor.'" *Cusson v. Liberty Life Assur. Co. of Boston*, 592 F.3d 215, 224 (1st Cir. 2010) abrogated on other grounds by *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U. S. ____, 136 S. Ct. 651 (2016) (quoting *Leahy*, 315F.3d at 18, *Orndorf*, 404 F.3d at 517). Rather, "[i]t is

the responsibility of the [plan] administrator to weigh conflicting evidence." *Vlass v. Raytheon Employees Disability Trust*, 244 F.3d 27, 32 (1st Cir. 2001). The issue is "'not which side [the Court] believe[s] is right, but whether the insurer had substantial evidentiary grounds for a reasonable decision in its favor.'" *Brigham v. Sun Life of Can.*, 317 F.3d 72, 85 (1st Cir. 2003) (quoting *Doyle*, 144 F.3d at 184) (internal modifications omitted).

This unique procedural approach to ERISA appeals through motions for judgment on the administrative record is reflected in the District of Maine's local rules specifically dedicated to claims under ERISA. See SPECIAL PROCEDURES FOR ERISA BENEFIT CASES, ERISA SURVEY OF FED. CIRCUITS § 1.VIII.D (2016) ("The [district courts] typically require that the case be resolved on motions for summary judgment (or, alternatively, motion for judgment on the administrative record) unless a party can show cause for holding a trial or evidentiary hearing . . . .") (citing D. ME. LOCAL RULE 16.1(a)(6), 16.2(c)(4)).

## IV. DISCUSSION

### A. Amendment of the Pleadings

In his response, Mr. Anderson concedes that he may not proceed with his state law claims because they are preempted by ERISA, and he proposes to amend his Complaint to proceed solely on an ERISA claim. *Pl.'s Opp'n* at 1. But he never formally moved to amend his Complaint nor did he submit a proposed amended complaint for the Court to act on. At the same time, Liberty Life has no objection to Mr. Anderson proceeding under § 502(a)(1)(B) of ERISA. *Def.'s Reply* at 1. Although unconventional, the Court views this byplay between the Plaintiff and Defendant as

14

effectively trying the ERISA issue by consent under Federal Rule of Civil Procedure 15(b)(2). The Court also interprets Mr. Anderson's memorandum as a motion to dismiss his state law claims, and the Court does so with prejudice because Mr. Anderson concedes that he may not proceed with his state law claims as they are subject to "complete preemption." *Pl.'s Opp'n* at 3-4.

### B. Mr. Anderson's claim is barred and even if were not, Liberty Life's denial was not an abuse of discretion

"ERISA requires employee benefit plans to provide any participant whose claim for benefits is denied with an opportunity for review by the fiduciary denying the claim." *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir. 1988). "[A] claimant must have exhausted the plan's administrative remedies before bringing suit to recover benefits . . . unless 'the administrative route is futile or the remedy inadequate.'" *Terry*, 145 F.3d at 40 (quoting *Drinkwater*, 846 F.2d at 826); *Medina v. Metro. Life Ins. Co.*, 588 F.3d 41, 47 (1st Cir. 2009). Claimants must also exhaust the internal appeals process in a timely manner. *Terry*, 145 F.3d at 40.

There is no dispute that Mr. Anderson chose not to pursue an internal appeal with Liberty Life. Since the sixty-day time window for an internal appeal elapsed before Mr. Anderson brought his legal challenge, his lawsuit is barred unless an exception to the exhaustion doctrine applies or unless there was some material defect in Liberty Life's notice or procedures relating to the denial of his claim. Mr. Anderson "has not attempted to make any showing of futility or inadequacy," so those exceptions do not apply. *See id.*

### 1. Liberty Life's notice of denial was not defective simply because it sent the letter to Mr. Anderson's attorney, rather than to Mr. Anderson himself

Mr. Anderson's first argument—that Liberty Life's denial letter was defective because it was sent to his attorney rather than to Mr. Anderson personally—fails because "[i]n contemplation of law, notice to the attorney is notice to the claimant." *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 143 (1st Cir. 2012). Mr. Anderson cites no authority for his argument, and the Court did not locate any support within ERISA or the caselaw. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93 (1990) ("If Congress intends to depart from the common and established practice of providing notification through counsel, it must do so expressly"). To the contrary, for the claim procedures for a plan to be deemed "reasonable" under ERISA, the procedures must not "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." 29 C.F.R. § 2560.503-1(b)(4). Furthermore, Mr. Anderson conspicuously does not contend that he was prejudiced because his attorney never received the letter or never informed him about the letter.

### 2. Liberty Life need not show that it was prejudiced by Mr. Anderson's delay

Some states prohibit insurers from denying claims because the claimant failed to provide notice of loss within the policy's time limits unless the insurer shows it was prejudiced by the claimant's delay. Under *UNUM Life Insurance Company of America v. Ward*, 526 U.S. 358, 367-73 (1999), if the applicable state law imposes a notice-prejudice rule, ERISA does not preempt application of that rule to an untimely

initial claim for benefits under an ERISA plan. *See Fortier v. Hartford Life & Accident Ins. Co.*, No. 16-cv-322-LM, 2017 WL 4011147, 2017 U.S. Dist. LEXIS 146251, at *16-19 (D.N.H. Sept. 11, 2017). Maine has adopted a notice-prejudice rule for liability insurers. *See Ouellette v. Maine Bonding & Cas. Co.*, 495 A.2d 1232, 1235 (Me. 1985) ("[T]o avoid either its duty to defend or its liability thereunder based on an insured's delay in giving notice, a liability insurer must show (a) that the notice provision was in fact breached, and (b) that the insurer was prejudiced by the insured's delay"); *Franco v. Selective Ins. Co.*, 184 F.3d 4, 7 (1st Cir. 1999) ("Under Maine law, a failure to give notice will only excuse an insurer if the insurer—who bears the burden—can show that it was prejudiced by the lack of notice"); *Spellman v. UPS*, 540 F. Supp. 2d 237, 247, n.38 (D. Me. 2008) ("The Maine law also resembles the notice-prejudice rule that the Supreme Court upheld in *UNUM*").

Other courts have declined to apply state notice-prejudice rules in the ERISA context where, as here, the state law is limited to initial claims in the liability insurance context. *See Monast v. Johnson & Johnson*, 680 F. Supp. 2d 299, 306 (D. Mass. 2010) ("the fact that the state legislature has expressly limited the rule to liability insurers weighs heavily against extending the rule to disability insurers") (quoting *Walley v. Agri–Mark Inc.*, 2002 WL 1796917, *2, 2002 U.S. Dist. LEXIS 14268, *6 (D. Mass. 2002)). Even if the Court interpreted Maine's notice-prejudice rule to cover initial ERISA claims, it provides little assistance to Mr. Anderson. His claim was not denied for failing to file his initial claim in a timely manner. His claim was denied nearly a year afterward for failing to provide required documents. Mr.

Anderson has not explained why Liberty Life's denial for this separate reason would fall within the scope of Maine's notice-prejudice rule covering late-filed claims.

But the Court need not decide whether Maine's notice-prejudice rule from the liability insurance context applies to initial ERISA claims because, even assuming that the notice-prejudice rule applies to Mr. Anderson's initial claim for AD&D benefits and that Liberty Life failed to demonstrate prejudice from the delay in producing documents, the rule is different when addressing untimely ERISA appeals. Mr. Anderson should have presented his notice-prejudice argument to the plan during an internal appeal, but he chose not to appeal Liberty Life's denial.

The federal courts that have considered similar requests to extend the notice-prejudice requirement yet another step to ERISA appeals have not required ERISA plans to show they were prejudiced by claimants' delay in pursing internal appeals. *See Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 363 (7th Cir. 2011) ("state notice-prejudice rules typically apply only to initial denials of benefits"); *Chang v. Liberty Life Assur. Co. of Boston*, 247 F. App'x 875, 878 (9th Cir. 2007) (unpublished) ("There is no California nor federal case that has applied a notice-prejudice rule outside the initial review context" *Fortier v. Hartford Life & Accident Ins. Co.*, No. CV 16-CV-322-LM, 2017 WL 4011147, *6, 2017 U.S. Dist. LEXIS 146251, *17 (D.N.H. Sept. 11, 2017) (noting that one district court, in dictum, suggested that notice-prejudice rule could apply, but collecting cases declining to extend the rule to untimely ERISA appeals). This approach makes sense, since extending the notice-prejudice rule to untimely ERISA appeals would significantly frustrate the

exhaustion requirement that the federal courts have consistently enforced in the ERISA context.

> **3.** **There is an emerging exhaustion exception for misleadingly permissive terms or notices, but it does not assist Mr. Anderson because he was represented by counsel and has not shown that he was actually misled**

The federal courts of appeals are divided on the propriety of plans using permissive rather than mandatory language in the provisions and notices governing internal appeals processes and deadlines. One circuit concluded that permissive language informing claimants that they "may" appeal their denial is sufficient to bar subsequent lawsuits when claimants do not exhaust those internal remedies. *See Wert v. Liberty Life Assur. Co. of Boston*, 447 F.3d 1060, 1063 (8th Cir. 2006) ("This exhaustion requirement applies so long as the employee has notice of the procedure, even if the plan, insurance contract, and denial letters do not explicitly describe the review procedure as mandatory or as a prerequisite to suit").

Four circuits concluded that permissive language can be misleading, and that in order to bar subsequent lawsuits for failing to exhaust internal appeals, plans will often need to use mandatory language, such as informing claimants that they "must" pursue an internal appeal in order to file suit later. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1298-99 (9th Cir. 2014) ("Where plan documents could be fairly read as suggesting that exhaustion is not a mandatory prerequisite to bringing suit, claimants may be affirmatively misled by language that appears to make the exhaustion requirement permissive when in fact it is mandatory as a matter of law"; *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173,

180-81 (2d Cir. 2013) ("This exception to the general exhaustion requirement is grounded in the statutory dictate that the plan description "'shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan'") (quoting 29 U.S.C. § 1022(a)); *Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203, 1207-09 (11th Cir. 2003) ("The claim ought not to be barred by the doctrine of exhaustion if the reason the claimant failed to exhaust is that she reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit"); *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 810-11 (7th Cir. 2000) (same, on estoppel grounds).

Mr. Anderson has a point that the denial letter and plan terms might have been misleading to an ordinary claimant. The denial letter says, "[Y]ou *may* request a review of this denial by writing to the Liberty representative signing this letter" (emphasis supplied), but also says, "If Liberty does not receive your written request within 60 days of your receipt of this notice, our claim decision will be final, this file will remain closed, and no further review of this claim will be conducted." AR 12. While the passive voice in the latter sentence creates some ambiguity, the context ensures that the average reader will believe this refers only to review by Liberty Life, not by a court.[3] With no mention of other legal remedies, ordinary readers are

---

[3]    If the sentence were rewritten using the active voice, an ordinary reader would assume it would say: "If Liberty does not receive your written request within 60 days of your receipt of this notice, Liberty's claim decision will be final, we will continue to keep your file in closed status, and we will

unlikely to realize they sacrifice their legal remedies by failing to request an internal appeal. The Plan does state that "legal actions are contingent upon first having followed the Claims and Appeals procedure," AR 84, but that Appeals Process provision says, "If the claimant does not agree with the reasons given, he *may* request an appeal of the claim. To do so, the claimant *should* write to Liberty within 60 days after the notice of denial was received." AR 82 (emphasis supplied). Neither the denial letter nor the terms of the plan uses the kind of mandatory language or clear warning about exhaustion that would inform ordinary claimants that they forfeit their ability to challenge adverse decisions in court if they decline what reasonably appears to be a voluntary or optional internal appeal.

Unlike the ordinary claimant that ERISA and its regulations seek to protect, however, Mr. Anderson was represented by counsel throughout his claim process. Liberty Life sent the denial letter to his attorney. Mr. Anderson has not produced any evidence that he failed to exhaust only because he relied upon the permissive language in the denial notice and Plan and thus reasonably determined that he did not need to timely request an internal appeal before filing this lawsuit. In these circumstances, under even the more lenient cases recognizing an exception to the exhaustion requirement, Mr. Anderson needed to exhaust his internal remedies. *See Kirkendall*, 707 F.3d at 181 (asking "whether [the plaintiff] failed to exhaust her administrative remedies because of this ambiguity; that is, whether she did indeed reasonably interpret the plan terms not to require her to file a benefits claim"); *Watts*,

---

conduct no further review of this claim." Read in this fashion, the language in this sentence could not reasonably be seen as barring a lawsuit.

316 F.3d at 1208 ("To attorneys and judges familiar with the law in general and with ERISA law in particular, it may seem obvious that administrative remedies must come before a lawsuit, but to the average plan participant, who by virtue of being an ERISA claimant will sometimes be sick or disabled, there is nothing obvious about it"); *Gallegos*, 210 F.3d at 811 (recognizing an exception to the exhaustion doctrine for misleading permissive language but declining to apply it to the plaintiff because "[she] has not demonstrated that she relied on [the plan's] representations to her detriment because she has not shown that but for [the plan's] representations she would have filed an administrative appeal within the 60–day limitations period").

### 4. Liberty Life's requests for documents were reasonable

Mr. Anderson's final argument—that Liberty Life improperly closed his claim by imposing an arbitrary deadline for him to submit proof of his claim—goes to the question of exhaustion and the merits of Liberty Life's denial. The argument fails for both purposes. Mr. Anderson cites no authority for this contention. Other courts have upheld denials for failure to provide reasonably requested documents. *See e.g.*, *Heffernan v. UNUM Life Ins. Co. of America*, 101 Fed. Appx. 99, 107 (6th Cir. 2004) (unpublished); *Bali v. Blue Cross & Blue Shield Ass'n,* 873 F.2d 1043, 1048 (7th Cir. 1989), disapproved of on other grounds by *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635 (7th Cir. 2005). It is Mr. Anderson who presents a strained interpretation of the Notice and Proof of Claim provision. Liberty Life need not adopt Mr. Anderson's view that the plan's outer *limit* on providing proof after 395 days following the date of loss works to *protect* claimants from denials for failure to provide proof "as soon as reasonably possible" before the 395 day hard deadline. Even if the Court agreed with

Mr. Anderson's interpretation of the provision, the Court's review of plan interpretations is cabined. Liberty Life's interpretation—that the provision requiring claimants to provide proof "as soon as reasonably possible" allows it to deny claims after repeated unanswered requests over the course of a year and thirty days' notice that denial is imminent—was not an abuse of discretion.

It would be different if a plan made unreasonably hasty demands for documents or prematurely closed a claim on a claimant working diligently to obtain the information, but this record shows a series of reasonable requests over an extended period of time. The denial was not arbitrary or unreasonable, especially because Mr. Anderson admits he gained access to the toxicology report roughly four months before Liberty Life closed his claim, and there are indications in the record that he likely had access to the contents of the report at least a month before that. Mr. Anderson now hints at an apparently unsuccessful attempt to send the report, but that assertion was not in an affidavit, there is no trace of it in in the ERISA record, and Mr. Anderson has not sought to modify or supplement the record.

Accordingly, the Court concludes that Mr. Anderson's lawsuit is barred for failing to exhaust the Plan's internal appeal remedies, and even if not barred, the denial for failure to submit proof was not an abuse of discretion.

### C. Dismissal with prejudice is proper

When a plaintiff fails to exhaust administrative remedies, courts ordinarily dismiss without prejudice so that the claimant might correct the oversight by properly pursuing the alternate remedies and, if still necessary, refile the lawsuit. *See Lebron-Rios v. U.S. Marshal Serv.*, 341 F.3d 7, 14 (1st Cir. 2003). But when the claimant will

be unable to properly exhaust and refile, courts often dismiss with prejudice. *See e.g.*, *Downs v. Runyon*, 99 F.3d 1138, 1996 WL 616718, *1, 1996 U.S. App. LEXIS 27811, *3 (6th Cir. 1996) (unpublished); *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1321 (7th Cir. 1984) ("If it were certain that McGuinness could get nowhere with the Postal Service's remedial processes, there would be no point in giving him a chance to go back to them; it would be clear that his suit was untimely, and it would have to be dismissed with prejudice"); *Labiosa-Herrera v. Puerto Rico Tel. Co.*, 153 F. Supp. 3d 541, 548 (D.P.R. 2016) ("If plaintiff could file a new complaint within the 300 day statutory time frame, she could remedy the exhaustion problem. The 300–day period for the suspension and Espinoza's comment, however, expired in January 2013. Therefore, it is proper to dismiss plaintiff['s] claims with prejudice") (internal citations omitted); *Navarro v. Wall*, No. C.A. 08-12ML, 2008 WL 4890756, *4 (D.R.I. Nov. 12, 2008).

Several courts concluded that a dismissal for failure to exhaust ERISA plan remedies should be with prejudice when the time window to pursue those remedies lapsed before the claimant filed suit. *See e.g. Holmes v. Proctor & Gamble Disability Benefit Plan*, 228 F. App'x 377, 379 (5th Cir. 2007) (unpublished); *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 230 (4th Cir. 2005); *Malke v. Metro. Life Ins. Co.*, No. CIV.A. 11-11571-DPW, 2012 WL 6738250, *2, 2012 U.S. Dist. LEXIS 182230, *5 (D. Mass. Dec. 27, 2012).

While the First Circuit has not expressly given such an instruction, it is the logical implication of its decision in *Terry v. Bayer Corporation*. 145 F.3d at 40. The

*Terry* Court upheld the district court's grant of summary judgment in favor of the plan's Benefit Committee after the Benefit Committee denied the plaintiff's claim because the plaintiff did not timely file his ERISA administrative appeal within the sixty-day window under the plan. *Id.* The Court is persuaded that there would be no point in dismissing without prejudice so that Mr. Anderson can exhaust his internal remedies by pursuing an appeal with Liberty Life, when Liberty Life would immediately deny that internal appeal as untimely, and when a court would uphold that denial under *Terry* if challenged in another lawsuit.

An unpublished case from the First Circuit, *Rivera-Diaz v. Am. Airlines, Inc.*, 229 F.3d 1133, 2000 WL 1022888, *1, 2000 U.S. App. LEXIS 18008, *2-4 (1st Cir. 2000), does not alter this conclusion. In *Rivera-Diaz*, the First Circuit "dismissed *without* prejudice" on exhaustion grounds because, unlike here, the plaintiff in that case had never successfully filed a claim with the ERISA plan, "[t]hus, his claim for denial of benefits, whether under ERISA or in tort, appear[ed] not yet to have accrued." *Id.*

Mr. Anderson specifically requests a dismissal without prejudice "based upon a finding that the administrative process was closed prematurely" and based on his contention that his claim for benefits should "be decided upon the merits." *Pl.'s Opp'n* at 9-10. However, the Court has concluded that Liberty Life did not close the administrative process prematurely and that Liberty Life was within its rights to consider the matter closed when Mr. Anderson failed to respond to repeated requests for relevant documents and failed to administratively appeal its denial. To dismiss

without prejudice would give Mr. Anderson false hope that his claim can be revived and could well result in further litigation and expense for both parties, when the ultimate result in favor of Liberty Life is preordained.

A dismissal without prejudice in the circumstances of *Rivera-Diaz* follows the usual approach and is consistent with the Court's approach here, where it dismisses with prejudice only because the time in which the claimant could have exhausted has long since elapsed.

## V.     CONCLUSION

The Court GRANTS Plaintiff Gale Anderson's motion to dismiss Counts One and Two of his Complaint; the Court dismisses each Count with prejudice.  Pursuant to Federal Rule of Civil Procedure 15(b)(2), the Court GRANTS Plaintiff Gale Anderson's motion to amend his Complaint to assert under Count Three a claim for benefits under § 502(a)(1)(B) of ERISA.

The Court DISMISSES Plaintiff Nancy Anderson because she does not have standing to make a claim for benefits under the Liberty Life Assurance Company of Boston policy.

The Court GRANTS Defendant Liberty Life Assurance Company of Boston's Motion for Judgment on the Record for Judicial Review (ECF No. 18) on Count Three of the Amended Complaint.  The Court DISMISSES with prejudice Gale Anderson's Complaint (ECF No. 1).

SO ORDERED.


/s/ John A. Woodcock, Jr.

JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of July, 2018